UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:20-CV-81280

MELISSA ARNETTE ELLIOTT, professionally
known as "MISSY ELLIOTT",

    Plaintiff,

v.

TERRY WILLIAMS,

    Defendant.

_____/

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, MELISSA ARNETTE ELLIOTT, professionally known as "MISSY ELLIOTT" ("**Plaintiff**" or "**Elliott**"), hereby files her Complaint as against Defendant TERRY WILLIAMS ("**Defendant**" or "**Williams**"), and in support thereof, states as follows:

**NATURE OF ACTION**

1.    This action is brought under the copyright laws of the United States, 17 U.S.C. § 101, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* to declare the sole authorship and ownership rights of Plaintiff in connection with Plaintiff's original copyrightable contributions to certain musical works and sound recordings embodying the musical works.

**THE PARTIES**

2.    Plaintiff Elliott, arguably the most celebrated female hip-hop artist in history and the first female rapper to ever be inducted into the Songwriters Hall of Fame, is a world-renowned, five-time Grammy award winning, multiplatinum singer-songwriter, producer and recording and performing artist.

3.    Plaintiff Elliott is a citizen and resident of the State of Florida, where Elliott has

resided since 2004.

4. Plaintiff Elliott is currently a resident of Palm Beach County, Florida, where Elliott has resided since 2014.

5. Upon information and belief, Defendant Williams is an individual residing in the State of Delaware.

## JURISDICTION AND VENUE

6. This is a civil action arising under the United States Copyright Act, 17 U.S.C. § 101 *et seq.*, for a declaratory judgment of copyright ownership. The jurisdiction of this Court is founded on 28 U.S.C. §§ 1338(a), 2201(a), and 2202.

7. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States and raises claims seeking a declaratory judgment of the parties' rights, title and interest of intellectual property materials pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

8. This action presents an actual case or controversy within the Court's jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(b)(3), as a substantial party of the property that is the subject of this action is situated in this Judicial District and Defendant is subject to this Court's personal jurisdiction.

## COMMON ALLEGATIONS

### General Background

10. During the time period of 1993 to 1995, Plaintiff Elliott was a part of the R&B musical group "Sista", which consisted of four members.

11. During this time, "Sista", as a group, had signed a recording agreement with a record label owned by Donald Earle DeGrate Jr. p/k/a DeVante, called Swing Mob. In connection with this recording agreement, DeVante's record label owned all the rights in and to all master sound

recordings "Sista" created.

12. Around this same time in or around 1993, DeVante's record label entered into a separate agreement with Elektra Records, which caused "Sista" to be in an exclusive group artist agreement with Elektra Records.

13. Throughout the time period of 1993 to 1995, Elliott worked extensively as a songwriter for "Sista", while also contributing songwriting for other artists.

14. The "Sista" album entitled *4 All the Sistas Around Da World*, including the songs entitled "Brand New" and "Sista Bounce", was publicly released by Elektra Records in or around 1994.

15. Elliott is credited on the album *4 All the Sistas Around Da World*, and the credited producers on the album include Donald Earle DeGrate Jr. p/k/a DeVante and Timothy Zachary Mosley p/k/a Timbaland.

16. Elliott did not know of or meet Defendant Williams until after production on the "Sista" album *4 All the Sistas Around Da World* was completed and the "Sista" single "Brand New" was publicly released.

17. Around this same time, Elliott, in her capacity as a songwriter, spent a substantial amount of time independently writing and creating lyrics, vocal arrangements and corresponding melodies and, at this stage of Elliott's career in the mid-1990s, even though Elliott was prolifically writing and creating lyrics, vocal arrangements and melodies, Elliott did not always have musical beats or backing tracks available to play alongside her preexisting lyrics, vocal arrangements and melodies.

18. In furtherance of Elliott's perpetual efforts to evolve and expand as a songwriter, at this juncture of her career, Elliott would often visit with other artists, music producers and sound engineers in a multitude of environments, including home recording studios, to rehearse her preexisting lyrics, vocal arrangements and corresponding melodies.

19. One of the music producers whose home recording studio Plaintiff Elliott would visit during this time in the mid-1990s was Defendant Williams.

20. Specifically, during this time, Elliott sporadically went to Defendant Williams' home studio several times to listen to the beats in Defendant's database and rehearse Elliott's preexisting lyrics and accompanying melodies that Elliott wrote along with those beats to experiment with various sounds.

21. Defendant Williams, however, was not a songwriter or vocal arranger. Rather, Defendant Williams was strictly a music producer who maintained a database of various musical beats and instrumentals. Although Defendant Williams may also have occasionally created his own beats and backing tracks as part of his preexisting database, he may have also been playing back musical beats created by others.

22. Around this time, Elliott would often independently write up to 5-6 songs per day. Occasionally visiting studios, like Defendant Williams' home studio, provided Plaintiff Elliott with an opportunity to hear how her preexisting lyrics and melodies sounded with various musical beats that music producers like Williams would play for Elliott to hear.

23. Defendant Williams never contributed to or provided input on Elliott's independently created lyrics, vocal arrangements and melodies.

24. Rather, Defendant Williams was one of several music producers or other persons with home studios who provided Elliott an opportunity through his home studio for Elliott to listen to how Elliott's lyrics, vocal arrangements and melodies sounded when played back on a recording.

25. Plaintiff Elliott never, at any time, entered into any agreement with Williams of any kind or nature, and never, at any time, ever discussed or contemplated entering into any agreement with Williams of any kind or nature.

26. In or around this time period of 1993 to 1996, Elliott independently wrote and created lyrics and melodies that would eventually be recorded by the artist Aaliyah as a song entitled

"Heartbroken", and included on Aaliyah's second studio album entitled *One in a Million*, released to the public in or around August 1996 (the "**Aaliyah Album**").

27. Elliott is credited as a songwriter on eight (8) songs that are included on the Aaliyah Album, each of which Elliott wrote and created.

28. As with many other lyrics, vocal arrangements and melodies Elliott created during this time period, Elliott independently wrote the lyrics and melodies for the song "Heartbroken".

29. At the time Elliott independently created these lyrics, vocal arrangements and melodies, Elliott had no intention of using them with any *specific* beats or backing tracks created by any music producer.

30. Instead, consistent with Elliott's custom and practice, even today, after Elliott would write and create lyrics, vocal arrangements and melodies, Elliott would thereafter listen to preexisting musical beats of many other music producers and then rehearse her preexisting lyrics and accompanying melodies alongside some of their beats to experiment with various sound combinations and to determine which beats Elliott liked.

31. At the time Elliott created and wrote these lyrics, vocal arrangements and melodies, Elliott had no intention of integrating or merging them with any specific musical beats of any particular music producer, and Elliott certainly had no intention at that time of integrating these works with any beats, backing tracks or other musical accompaniments or arrangements within the database of Williams.

32. Elliott also never, at any time, intended to share any rights of authorship with Williams in the lyrics, vocal arrangements and melodies for any of the songs Elliott created, all of which Elliott independently wrote and authored.

33. Defendant Williams did not contribute anything to the lyrics, vocal arrangements, melodies, song structure or any other aspect of the songwriting process of Elliott's lyrics, vocal arrangements and melodies which Elliott alone created.

34. On the occasional times Elliott would visit Defendant Williams' home studio, Elliott would listen to some of the musical beats and instrumentals in Williams' database and then rehearse some of her preexisting lyrics, vocal arrangements and melodies.

35. Defendant Williams never, at any time, made any independently copyrightable contributions to any of Elliott's numerous and independently developed lyrics, vocal arrangements and melodies.

36. Elliott signed and entered into a recording agreement with Elektra Records in or around February 1997 as a solo artist.

37. The last time Elliott visited Williams' home studio was in or around 1996, prior to entering into this recording agreement with Elektra Records.

**Defendant's Attempts to "Sell" Recordings Featuring Plaintiff's Vocal Performance**

38. Approximately twenty (20) years later, in or around January 2017, an individual named Constance Gary ("**Gary**") contacted a talent management company via an unsolicited email entitled: "Unreleased Missy Elliott Material for Review", claiming to be attaching a file that contained 8 "abbreviated" tracks, produced by a "friend", purportedly featuring the performance of Elliott. As part of this email, Gary claimed to want to know if Elliott wanted to pay Gary for this alleged material. It was later revealed that the "friend" to whom Gary was referring was Defendant Williams.

39. Thereafter, in or around February 2017, Gary sent a letter to a representative of Plaintiff indicating that she was writing on behalf of Defendant Williams, and was seeking to have Elliott "purchase" this purported "unreleased" material that Defendant Williams allegedly maintained in his possession from more than 20 years prior.

40. Within this February 13, 2017 communication, Gary stressed that it was the "hope" of both Gary and her friend, Defendant Williams, that Plaintiff Elliott "purchase Mr. Williams' copyrights and his publishing interests, along with the physical master tapes in his possession, in lieu

-6-

of Mr [sic] Williams pursuing other options."

41.     Within this communication, Gary further indicated that Defendant Williams was "open to offers" and that she would like to "handle this matter as expeditiously and discretely as possible."

42.     Within various intermittent communications thereafter, Gary indicated that there were approximately "35 songs" in Defendant Williams' purported "collection".

43.     On January 11, 2018, an attorney representing Williams sent a letter to counsel for Elliott purporting to enclose a list of 34 recordings featuring the vocal performances of Plaintiff Elliott that Williams was seeking to sell (the "**Recordings**"). A true and correct copy of this January 11, 2018 letter, enclosing the list of 34 recordings, is attached hereto as **Exhibit "A"**.

44.     Several of the Recordings Defendant Williams was attempting to "sell" feature the vocal performances of not only Plaintiff Elliott, but of another artist as well, specifically Nicole Wray.

45.     However, even though some of the Recordings comprising Defendant Williams' alleged catalog feature the vocal performances of Nicole Wray, Plaintiff Elliott exclusively and solely authored and composed the lyrics, vocal arrangements and melodies underlying and embodied within each of the subject Recordings.

### Defendant's Lawsuit Filed Against Plaintiff in Pennsylvania

46.     On November 14, 2018, Williams filed a lawsuit against Elliott and several other parties in the Court of Common Pleas in and for Philadelphia County, styled *Terry Williams v. Melissa Arnette Elliott et al.*, Case Number 001709 (the "**Pennsylvania State Court Action**").

47.     Within the complaint Williams filed in the State Court Action, Williams asserted four causes of action for (i) breach of contract / good faith & fair dealing; (ii) unjust enrichment / quantum meruit; (iii) an accounting; and (iv) constructive trust.

48.     On December 14, 2018, Elliott filed a notice of removal pursuant to 28 U.S.C. § 1446,

removing the State Court Action to the United States District Court for the Eastern District of Pennsylvania, Case No. 1811-1709. (the "**Pennsylvania Federal Court Action**").

49. On June 19, 2019, Williams filed a first amended complaint against Elliott and various other parties in the Pennsylvania Federal Court Action, wherein Williams asserted two claims for (i) copyright infringement against Elliott and others; and (ii) contributory infringement solely against Elliott (the "**FAC**").

50. On July 12, 2019, Elliott filed a motion to dismiss Williams' FAC.

51. On February 6, 2020, the United States District Court for the Eastern District of Pennsylvania entered an order granting Elliott's motion to dismiss Williams' FAC as against Elliott with prejudice. A true and correct copy of the February 6, 2020 order dismissing Williams' claims against Elliott with prejudice is attached hereto as **Exhibit "B"**.

## COUNT 1
## DECLARATORY JUDGMENT OF COPYRIGHT OWNERSHIP
**(17 U.S.C. §§ 501, *et seq*.)**

52. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 51 above as if fully set forth herein.

53. This is an action for declaratory relief pursuant to 28 U.S.C. §2201 that Plaintiff Elliott exclusively authored and is the sole owner of the lyrics, vocal arrangements and melodies underlying and embodied within the subject Recordings.

54. Pursuant to 28 U.S.C. § 2201 and 17 U.S.C. § 101 *et seq.*, this Court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

55. An actual controversy exists between the parties as to whether Plaintiff is the sole owner of all rights, title and interest in and to the lyrics, vocal arrangements and melodies underlying and embodied within the subject Recordings Plaintiff exclusively authored.

56. The ownership of copyright in sound recordings or musical compositions initially vests in Plaintiff, the author. 17 U.S.C. § 201(a).

57. By virtue of Plaintiff's independent creation and development of the lyrics, vocal arrangements and melodies underlying and embodied within the subject Recordings, Plaintiff is the sole owner of all rights, title and interest in and to the lyrics, vocal arrangements and melodies underlying and embodied within the subject Recordings.

58. "A 'joint work' is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101.

59. Plaintiff Elliott did not prepare her lyrics, vocal arrangement and melody contributions with the knowledge and intention that they would be merged with the contributions of Defendant Williams as "inseparable or interdependent parts of a unitary whole" and Plaintiff maintained no intention, at the time these works were created, that the parts be absorbed or combined into an integrated unit, including with any contributions of Defendant Williams.

60. Plaintiff never, at any time, intended to be a joint author with Defendant Williams of any musical works or recordings.

61. Plaintiff therefore seeks a judgment declaring that:

   a. Plaintiff is the sole author and sole owner of the lyrics, vocal arrangements and melodies underlying and embodied within the subject Recordings, in addition to any other recordings Defendant Williams possesses or maintains, or ever possessed or maintained, featuring the vocal performance of Plaintiff Elliott;

   b. Defendant Williams did not jointly author any of the lyrics, vocal arrangements or melodies in the Recordings and is not an equal co-owner in the copyrights in any of the lyrics, vocal arrangements or melodies in the Recordings and does not hold an equal undivided interest in the copyright and

    publishing rights to the lyrics, vocal arrangements or melodies in the Recordings;

c.  Plaintiff Elliott has not executed a valid transfer of ownership in copyright to Defendant Williams in the lyrics, vocal arrangements and melodies underlying and embodied within the subject Recordings;

d.  Defendant Williams, and his agents, officers, servants, employees, successors and assigns, and all others acting in concert or in privity with Defendant Williams, are preliminarily and permanently enjoined and restrained from directly or indirectly exploiting any of the Recordings, including, without limitation, displaying, reproducing, transferring or distributing the Recordings in any respect; *and*

e.  As a result of Plaintiff's sole authorship and ownership of the lyrics, vocal arrangements and melodies underlying and embodied within the subject Recordings, any and all assignments, transfers and/or licenses by Williams of any of the Recordings are null and void.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff, Melissa Arnette Elliott, respectfully requests that this Court enter judgment in her favor and as against Defendant Terry Williams, as follows:

i.  That the Court enter a Declaratory Judgment, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Plaintiff is the sole author and sole owner of the lyrics, vocal arrangements and melodies underlying and embodied within the subject Recordings, in addition to any recordings Defendant Williams ever made in his home studio featuring the vocal performance of Plaintiff Elliott;

ii.  That Defendant Williams did not jointly author any of the lyrics, vocal arrangements or melodies in the Recordings and is not an equal co-owner in the copyrights in any of the lyrics, vocal arrangements or melodies in the Recordings and does not hold an equal undivided interest in the copyright and publishing rights to the lyrics, vocal arrangements or melodies in the Recordings, or with respect to any recordings Defendant Williams ever made in his home studio featuring the vocal performance of Plaintiff Elliott;

iii. Preliminarily and permanently enjoining and restraining Defendant and his agents, officers, servants, employees, successors and assigns and all others acting in concert or in privity with Defendant, from directly or indirectly, infringing Plaintiff's rights under federal or state law in the lyrics, vocal arrangements and melodies underlying and embodied within the subject Recordings, including, without limitation, reproducing or distributing the Recordings, or any recordings Defendant Williams ever made in his home studio featuring the vocal performance of Plaintiff Elliott;

iv. That judgment be entered against Defendant for Plaintiff's costs, disbursements, and attorneys' fees pursuant to 17 U.S.C. §§ 101, *et seq*.; *and*

v. That the Court grants such other and further relief as this Court deems just, proper, and equitable under the circumstances.

DATED: August 6, 2020                Respectfully submitted,


By: /s/ Michael A. Trauben
Michael A. Trauben (Fla. Bar No. 816841)
E-mail: mtrauben@singhtraubenlaw.com
SINGH, SINGH & TRAUBEN, LLP
400 S. Beverly Drive, Suite 240
Beverly Hills, CA 90212
Tel: 310.856.9705 | Fax: 888.734.3555

***Attorneys for Plaintiff***
MELISSA ARNETTE ELLIOTT